UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14027-CR-ROSENBERG/MAYNARD

UNITED STATES OF AMERICA

vs.

BLAINE KORBIN HULTEN,

                 Defendant.
_____/

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds in opposition to the defendant's motion for downward variance, and moves this Honorable Court to deny the defendant's motion, and sentence the defendant to a period of 328-months' imprisonment, followed by lifetime supervised release.

FACTUAL AND PROCEDURAL BACKGROUND

On March 28, 2022, law enforcement began an investigation into an adult male contacting minor females via snapchat for illicit images and sex (PSI ¶ 26). The first minor victim explained that she met the defendant when he drove her and a friend to the mall (PSI ¶ 27). After this trip, the defendant communicated with minor victim 1 via snapchat, and sent her a picture of his penis (id.). He went on to suggest a sexual relationship, despite the fact that minor victim 1 was only 13, stating:

    MV 1: "[y]eah but blaine, your 21 and I'm 13 how do you expect that to even happen."

    MV 1: "I mean we can't be sexual tho blaine,"

>Defendant: "I understand why ur reason but fuck what the laws say, there are no laws jus people who conform We can do anything we want, the fact I'm able to go to the mall with u means I could take u anywhere private and no one would ever know."

(PSI ¶ 24).

On March 29, 2022, law enforcement discovered a second victim, minor victim 2, who described a similar series of events (PSI ¶ 28).  She met the defendant at a park, and during a snapchat conversation, the defendant made similar advances, he asked for pictures of minor victim 2, suggested that they have sex, and sent her a picture of his penis, to which, minor victim 2 explicitly asked the defendant never to do that again (PSI ¶ 29).

On March 30, 2022, law enforcement contacted minor victim 3, who met the defendant through a mutual friend (PSI ¶ 30)  That friend told minor victim 3 that the defendant was someone who she could call if she ever needed a ride (id.).  During their conversation, minor victim 3 told the defendant she was 13, but he still made sexual comments about her, and suggested sexual things that they could do together (PSI ¶ 31).

The same day, law enforcement spoke with the mother of minor victim 4 (PSI ¶ 32).  They learned that Hulten texted minor victim 4, who was 14 years old, looking to have sex (id.).

On March 31, 2022, law enforcement spoke with minor victim 5, a 13-year-old female who met the defendant via mutual friends.  She began texting with the defendant using snapchat, and ultimately had sex with the defendant (PSI ¶¶ 33-34).  In late 2021, minor victim 5 met the defendant in downtown Jensen Beach to hang out (PSI ¶ 33).  During their time together, minor victim 5 needed to charge her cellphone, so they went to defendant's car (id.).  While in the car, the defendant touched her leg, removed his clothes, and had sex with her (PSI ¶ 34).  Thereafter, the defendant and minor victim 5 had a conversation about their ages, during which, minor victim

5 revealed to the defendant that she was only 13 years old (PSI ¶ 35). Despite this, the defendant continued to sexually pursue her, he sent her a picture of his penis, and suggested places where they could have sex, stating, "I mean ur adorable, fuck, just call me a pedo already." (PSI ¶ 36). Then, on January 9, 2022, the defendant sent minor victim 5 a series of sexual messages, explaining that he does not use protection, that he would buy her "plan b" so she did not get pregnant, and described the way he intended to have sex with her (PSI ¶ 37). Several hours later, he texted minor victim 5, stating, "Ur pussy doesn't smell[…]" and the following day texted, "I still feel weird about doing it but I'm glad u liked it. I did to, jus feel weird…It's lots to process doing a 13yr old." (PSI ¶¶ 37-38). Over the next month and a half, between February 2022, and March 2022, the defendant continued to solicit minor victim 5 for nude photos (PSI ¶¶ 41-43).

Less than a month later, a sixth victim, minor victim 6, reported that her friend received a video depicting minor victim 6 having sex with the defendant (PSI ¶ 12). Minor victim 6 explained that she dated the defendant for a few months, that they had sex eight times, and on one occasion, the defendant asked to record their sexual activity, and she agreed (PSI ¶ 14). She later learned that the defendant created additional videos without her consent (PSI ¶¶ 14-15). The defendant sent minor victim 6 three videos of them having sex (PSI ¶ 19). In addition to these videos, law enforcement located conversations between minor victim 6 and the defendant, in which the defendant encouraged minor victim 6 to "go get the plan b." (id.). Minor victim 6 was 16 years old at the time of the sexual contact (PSI ¶ 12).

Upon his arrest, the defendant offered a number of excuses for his conduct, claiming that minor victim 6 was his "borderline girlfriend," and he denied having sex with minor victim 5, claiming they only fooled around (PSI ¶¶ 47, 50). As the interview progressed, the defendant admitted that he had sex twice with minor victim 5 (PSI ¶ 50). However, the defendant blamed

his actions on his mental illness (PSI ¶ 53).  Then, in a recorded jail call to his mother, the defendant stated, "I mean you play the mental card here."  His mother interrupted him, telling him not to go there, but he continued, stating "I'm not even joking though."

On May 5, 2022, a federal grand jury returned an Indictment, charging the defendant with two counts of enticement of a minor (counts one and two), one count of production of visual depictions involving sexual exploitation of minors (count three), and one count of distribution of visual depictions involving sexual exploitation of minors (count four) (ECF No. 1).

On September 13, 2024, the defendant pled guilty to count three the Indictment (ECF Nos. 81-83).

On January 2, 2025, the defendant filed the instant motion for downward variance and sentencing memorandum (ECF No. 89).

## ANALYSIS

**The § 3553(a) factors do not support a downward variance.**

A sentence of 328-months' imprisonment, followed by lifetime supervised release, is sufficient, but not greater than necessary to ensure the objectives of 18 U.S.C. § 3553(a).

In *Kimbrough v. United States*, the Supreme Court upheld a variance based on policy considerations, and in consideration of the objectives of the 3553(a) factors. *Kimbrough v. United States*, 552 U.S. 85, 89 (2007) and *see United States v. Flores-Perez*, 749 Fed.App'x 793, 798 (11th Cir. 2018).  *Kimbrough* granted permissive authority to district courts to grant a variance based on policy considerations, but did not mandate such a variance in every instance.  *Flores-Perez*, 749 Fed.App'x at 799 and *United States v. Trejo*, 624 Fed.App'x 709, 715 (11th Cir. 2015). Instead, a sentence within the sentencing guidelines is expected, but not presumed to be reasonable,

so long as it considers the arguments of the parties, the 3553(a) factors, and offers support for its reasoning. *Id*. at 799 and *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016).

When sentencing a defendant, the Court is required to "impose a sentence sufficient, but not greater than necessary" that complies with the purposes of the statute and takes into consideration the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public, to provide the defendant with adequate services, and which considers the kinds of sentences available, the sentencing ranges, pertinent policy, the need to avoid unwarranted sentencing disparities, and to provide restitution. 18 U.S.C. § 3553(a).

**A. Nature and circumstances of the offense.**

In this case, the defendant's engaged in a repeated pattern of sexually aggressive, exploitative, conduct, despite his own acknowledgment of the depravity of his actions.

The defendant used his age to coerce sexually inexperienced girls to engage in wildly inappropriate conduct, ranging from sexual discussions, all the way to penetrative, vagina sex. On at least two instances, the girls had the wherewithal to call out the defendant's predatory behavior: minor victim 1 bluntly told the defendant that she was thirteen, and that they could not do anything sexual; and when the defendant sent minor victim 2 a picture of his penis, she told him never to do that again. Yet this did not deter the defendant. The defendant downplayed minor victim 1's protestations, acknowledging her concern that she was 13, but argued that while there are laws, those laws only apply to people who conform. He went on to tell her that he knew places they could go that were private, safe, and no one would ever know, implying that he understood the illegality of his conduct.

Despite his understanding of right and wrong, the defendant knowingly, and repeatedly, had sex with a 13-year-old, and a 16-year-old. The defendant met minor victim 5 through mutual friends, and had several conversations via text. In November or December of 2021, the two hung out in person, and during the meeting, minor victim 5 went to the defendant's vehicle to charge her cellphone. While inside, and with the privacy of his car, the defendant had sex with minor victim 5. She was a virgin, and did not want to have sex with the defendant. After the encounter, the defendant and minor victim 5 had an extended conversation about her age, but despite this knowledge, the defendant chose to have sex with minor victim 5 a second time, a day after he learned she was only 13. After their second encounter, the defendant admitted that it was a lot "to process doing a 13yr old" but he continued to pursue minor victim 5. He solicited her for pictures, told her he still wanted to have sex, and sent her graphic photos of his penis.

The defendant then had sex with minor victim 6, approximately one month after his last encounter with minor victim 5, and they ultimately had sex approximately eight times in different locations in Martin County. In one instance, the defendant filmed the sex act, and distributed it to others without minor victim 6's consent. After one of these sexual encounters, the defendant became paranoid after learning that minor victim 6 was not on birth control, and proceeded to offer her money to purchase "plan b" to avoid pregnancy. This demonstrates that the defendant understood the consequences of his actions, but he only considered those consequences when they affected his interests, and his well-being.

In each instance, the defendant only responded to his base, sexual desires, without regard for the psychological or emotional impact of his actions on the victims. He never considered the impact of sending lewd photos to 13-year-old girls, he never considered their inability to fully comprehend, or consent to, the acts he proposed, and he never considered the lasting emotional

6

consequences his actions would have on their lives. Instead, the defendant did what felt good, so long as he believed he would not get caught.

Ultimately, when he was arrested, he minimized his actions, describing himself as non-sexual, despite a litany of lewd text threads between himself and six different minors. The defendant justified his sexual acts with minor victim 6, claiming that she was his "borderline" girlfriend, and when he discussed the case with his mother, after confronting the reality of his situation, he suggested playing "the mental card" to escape the consequences of his actions.

These depraved acts depict a defendant who is singularly focused on his own sexual gratification, without regard for the social, psychological, or physical harm his actions caused the victims. The defendant's conduct was not passing or temporal. Instead, he repeatedly engaged in this depraved conduct, with multiple victims, and in one instance, recorded and distributed his conduct, subjecting his victim to perpetual victimization.

The defendant's conduct paints a picture of a dangerous person, willing to cross any moral or legal line for his own self-gratification, and as such, he requires a sentence commensurate with the gravity of his crime.

**B. Need for specific deterrence.**

The defendant's repeated, intentional behavior, suggests that any sentence in this case must be sufficiently serious to promote a respect for the law, to adequately deter future illegal conduct, and to protect the public.

The defendant did not experience a one-time lapse of judgement. On multiple occasions, the defendant exploited underage girls, convincing them to engage in sexual acts for his own personal gratification. These were not "relationships" or "flings." The defendant contacted multiple girls in a relatively short amount of time, suggesting that his focus was not a relationship,

regardless of its legality, but on a concerted attempt to obtain physical sexual gratification. His conversations with each victim followed similar patterns, and they all, eventually, devolved into sexual topics. This demonstrates his true intent: sex.

While the defendant may claim that his mental health conditions prevented him from understanding the nature of his conduct, the concerns that he expressed in his conversations suggest otherwise. The defendant expressed the importance of "Plan B" with both minor victim 5 and minor victim 6, suggesting that he understood the childbearing implications of sex. He also understood the moral and legal implications of having sex with an underage person, admitting to minor victim 5 that it was a lot "to process doing a 13yr old." Therefore, the defendant understood the consequences of his actions, but chose to repeatedly engage in the same, illegal, conduct.

These legal and moral dilemmas did not deter the defendant because he never faced the consequences of his actions, underscoring the need for specific deterrence. The level of the defendant's concern is clear in the tone of his text messages. When the discussion of fatherhood was abstract, he was cool and collected, and took on an informative tone, telling minor victim 5 about the merits of plan b and how it supposedly worked. But when confronted with the real prospect of fatherhood, the defendant displayed a sense of urgency, pressing minor victim 6 to obtain plan b, after he learned that she was not on birth control. Thus, the defendant is unable to regulate his conduct without the prospect of a real-life consequence, and therefore the sentence in this case must be sufficiently serious to stick in the defendant's mind, and serve as a deterrent against engaging in exploitative sexual conduct.

### C. Provide just punishment and avoid sentencing disparities.

A 328-month sentence is also sufficient, but certainly not greater than necessary to comply with the 3553(a) factors, while providing just punishment and remaining consistent with other sentences for similarly situated defendants. By way of comparison, the United States offers the following cases involving defendants engaged in the sexual exploitation of minors for the Court's consideration. *See United States v. Atkinson*, 23-80205-CR-RLR (S.D.Fla.) (defendant sentenced to 360 months for producing CSAM of two victims he had sex with); *United States v. Rivera Reyes*, 21-80064-CR-RLR (defendant sentenced to 300 months for attempting to solicit CSAM from young girls on Instagram while pretending to be a child); and *United States v. Maris*, 24-80052-CR-RLR (S.D.Fla.) (defendant sentenced to 360 months for attempted production of CSAM).

### CONCLUSION

Based on the foregoing, the United States respectfully requests the Court to deny the defendant's motion for downward variance, and sentence the defendant to 328-months' imprisonment followed by lifetime supervised release.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: **/s/Christopher H. Hudock**
Christopher H. Hudock
Assistant United States Attorney
Florida Bar# 92454
101 South U.S. Highway 1, Suite 3100
Fort Pierce, Florida 34950
Telephone: (772) 293-0951
Email: Christopher.hudock@usdoj.gov

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by either regular U.S. mail or inter-office delivery.

**/s/Christopher H. Hudock**
Christopher H. Hudock
Assistant United States Attorney